IOLA B. WILKINS *vs.* ALTA R. COOK, Executrix.

Androscoggin.    Opinion April 1, 1924.

*Recovery cannot be had on an item, concerning which defendant has paid all he agreed to pay and had no reason to suppose that further claim would be made upon him or his estate, the record disclosing no evidence of any legal or equitable reason why the item should be sustained.*

On report. An action for money had and received brought under R. S., Chap. 71, Secs. 12 and 14, an appeal having been taken by the executrix of the estate of Ella M. Booker late of Lisbon Center, deceased, from the report of Commissioners appointed by the Probate Court to pass upon alleged exorbitant claims. By agreement of the parties the cause was reported to the Law Court for determination. Judgment for the plaintiff for $117.50 with interest from date of writ.

The case is stated in the opinion.

*Frank A. Morey*, for plaintiff.

*L. A. Jack*, for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, WILSON, DEASY, JJ.

HANSON, J. This is an action for money had and received brought under R. S., Chap. 71, Secs. 12 and 14, by way of appeal from the

decision of the commissioners appointed on petition of the executrix to examine and report upon an alleged exorbitant claim. The case is before the court on report. The claimant, Iola B. Wilkins, filed her claim against the estate of Ella M. Booker as follows:

Lisbon Center, May 23, 1922.

| | |
|---|---:|
| For the privilege of the house, heat and light from March 19, 1916 to Feby. 15, 1922, three hundred and six weeks at $2.25 per week, | $688.50 |
| For use of the whole house during last sickness of Ella M. Booker, forty-two days at $2.00 per day | 84.00 |
| For cleaning and putting the house in order, cleaning and and repairing damage, and the loss of certain personal property | 33.50 |
| In all | $806.00 |

Before the claim was presented in its present form, a settlement had been made between the executrix and the claimant which was largely based on items extending back twenty-one years. On advice of counsel the check given by the executrix to the claimant was recalled, and these proceedings followed. Counsel for claimant in his brief contends that we should not consider the claim as originally made extending over a period of twenty-one years, with the claim before us comprehending but the last six years of the period first named. Consideration of the full period and of the relations between the claimant and defendant's intestate is unavoidable in reaching a conclusion. In 1895, according to the testimony of the plaintiff, Ella M. Booker, deceased, was invited to visit the claimant. Claimant says, "My aunt was going away on a visit and I asked her to come and stay with me two or three weeks while she was gone." That was the beginning. Miss Booker went on invitation and remained nearly twenty-seven years. The business relations of the parties are stated from the testimony of the plaintiff, as follows:

"Q.   Whereabouts in your home did Miss Booker live?

"A.   Well, her room was one of my front chambers; the corner chamber, as the street goes both ways; and she had the privilege of the whole house.

"Q.  And did she use the privilege?

"A.  Yes, sir.

"Q.  And for how many years?

"A.  Well, if she had lived until June it would have been twenty-seven years.

"Q.  When did she begin to pay anything for her use of the room?

"A.  After she had been there four years and four months she paid the first money she ever paid.

"Q.  And what did she pay along then?

"A.  She paid from time to time—I don't know as I have the dates. I guess you have them there; but when she had been there ten years and a half she had paid $136.50, and I told her at that time—well, that summer I fixed my house over, and until then she had used my furniture, and I wanted the furniture, and she bought some that summer for the room; furnished the room herself.  I told her as she had that large room and the use of the store room, that I thought she ought to have a stated price for her room, and she paid me twenty-five dollars a year for the next eleven years.

"Q.  Did that take into account at all the use of the house?

"A.  No, sir; just for her room.  And at the end of eleven years—that made twenty-one years and a half that she had been there—she had paid the sum of four hundred and eleven dollars, and fifty cents, making total of not quite thirty-seven cents a week from the time she came there.

"Q.  And for the last six years?

"A.  Commencing the first of January, 1917, she paid one dollar a week for her room.

"Q.  Did she ever board at your place?

"A.  She came there for her meals in September, 1917.  She was boarding across the street, and it appears she was getting her supper and breakfast there at my house some little time before I knew it; and I came home one Monday noon and she had the dinner on the table, and she had bought some things for the table.  I asked her why she wasn't at her boarding place.  She said they wasn't going to keep her any longer.  So we got the meals together that way, and I guess it ran along two or three weeks; I thought she had perhaps done her part; and finally it was from Friday until the next Thursday and she hadn't contributed anything toward the support of the table,

and she asked me in this manner, 'What is this house going to have for dinner?' and I says, 'Ella, I think it is about time you should begin to think something about what this house is going to have for dinner,' and she says, 'Tell me what to get and I will get it,' and I says, 'Get what you have a mind to.' I says, 'Now I will tell you, if you want to get your meals here with me you give me two dollars and a half a week and I will do the buying, and you will have to assist about the work; and so it went that way until March, 1920, and I told her that I couldn't make myself whole on two dollars and a half a week for her board, and I says 'I will have to have another dollar.' She said 'You could have had it before if you had asked for it.' I said 'I didn't like to ask for it. You knew what things were costing and you knew what you were paying'; and she gave me three dollars and a half a week towards the meals from that time until she was taken sick.

"Q. How long was she sick in your house?

"A. Six weeks.

"Q. How long was it before her death that Alta R. Cook came?

"A. I think about four weeks."

We have read the testimony very carefully and fail to find any evidence to sustain the first item of the account annexed to the writ. There is evidence of a settlement after ten and one half years, and an arrangement under which the parties acted, mutually satisfied, for the next eleven years, or to 1917. Commencing January 1, 1917, decedent was to pay, and did pay, one dollar a week for her room. It is contended that there should be an allowance made for "the privilege of the house, heat and light" beginning March 19, 1916, and the time is fixed as 306 weeks at $2.25 per week. The record fails to disclose any reason, legal or equitable, for sustaining the claim. On the contrary, the plaintiff's own testimony negatives the contention and shows that decedent responded willingly to every demand made upon her for work or money, that from time to time settlements were made, based upon a definite agreement as to time and amount. It is clear that plaintiff never presented any such claim during the life of decedent, and never intended to. Decedent paid all she agreed to pay and had no reason to suppose that further claim would be made upon her or her estate. The parties made their contract as to the use of the room, which, in view of the evidence, included "the

privilege of the house, heat and light," and they lived up to the same. No other contract, express or implied, can be found in the evidence, and we can make none.

As to the remaining items amounting to $117.50, it seems to be conceded that the same are proper charges, and so it appears to us. The plaintiff is entitled to judgment for the sum of $117.50, with interest thereon from the date of the writ.

*So ordered.*